**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THOMAS O'CONNOR; ANDREW
STROBL,

        Plaintiffs-Appellants,

v.

WASHBURN UNIVERSITY; BOARD
OF REGENTS OF WASHBURN
UNIVERSITY; JERRY B. FARLEY,
individually and in his official
capacity as President, Washburn
University,

        Defendants-Appellees.

No. 04-3103

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CV-4001-GTV)**

---

Robert J. Muise, Thomas More Law Center, Ann Arbor, Michigan, for Plaintiffs-Appellants.

Stanley D. Davis (Kayden B. Howard, Kristen A. Page, with him on the brief), Shook, Hardy & Bacon, L.L.P., Kansas City, Missouri, for Defendants-Appellees.

---

Before **MURPHY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.    INTRODUCTION

Plaintiffs-appellants Dr. Thomas O'Connor and Andrew Strobl filed suit under 42 U.S.C. § 1983 against Washburn University, the Washburn Board of Regents, and Washburn President Dr. Jerry B. Farley individually and in his official capacity, claiming a statue placed on the Washburn campus violated their rights under the First Amendment of the United States Constitution. The statue in question is entitled *Holier Than Thou* and depicts the head and upper torso of what appears to be a Roman Catholic bishop. *See* Attachment. Appellants argue the statue's presence on the campus of a public university constitutes an unconstitutional endorsement of an anti-Catholic message. They seek nominal damages as well as declaratory and injunctive relief.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **dismisses** appellants' claims for injunctive and declaratory relief as moot and, as a consequence, **vacates** the judgment of the district court as to those claims since subject matter jurisdiction is now lacking. As to the remaining claim for nominal damages, this court holds that the statue's placement on Washburn's campus under these circumstances does not constitute an unconstitutional endorsement of an anti-Catholic message and therefore **affirms** the decision of the district court.

## II.    BACKGROUND

Washburn University is a municipal university in Topeka, Kansas funded by city and county taxes. The university is governed by a nine-member Board of Regents, which is responsible for appointing the university president. The president has the authority to expend university resources and to place or remove works of art on the Washburn campus without approval.

Since 1996, Washburn's Campus Beautification Committee has selected approximately five statues each year for display in a temporary outdoor sculpture exhibition. The exhibition supplements the university's collection of twenty-five outdoor statues permanently situated on campus. President Farley appoints the members of the committee from the local community and from Washburn's faculty and staff. For the 2003 exhibition, the committee chose a three-member volunteer jury made up of art professionals to select works for display. The jury chose five sculptures from among the ninety submissions received.

One of the chosen statues, entitled *Holier Than Thou*, depicts a Roman Catholic bishop with a contorted facial expression and a miter that some have interpreted as a stylized representation of a phallus. The bronze statue measures thirty-seven inches high by twenty-seven inches wide and is inscribed with the words, "The Cardinal." Its caption reads:

> The artist says, "I was brought up Catholic. I remember being 7 and going into the dark confessional booth for the first time. I knelt

down, and my face was only inches from the thin screen that separated me and the one who had the power to condemn me for my evil ways. I was scared to death, for on the other side of that screen was the persona you see before you."

The jury's selections were approved by the committee and by President Farley. None of the other statues chosen for the exhibition involved obvious religious themes.

Greg Inkmann, a member of the Campus Beautification Committee, was responsible for choosing where to display *Holier Than Thou* on campus. He placed the statue along a high-traffic sidewalk between the student union and the main administrative building, at a location used for other statues in past exhibitions. Inkmann testified that he placed the statue near a sidewalk because it was a small piece with fine detailing that could not be appreciated from a distance. Four other works of art were displayed within 200 feet of the sculpture, the nearest being thirty-three feet away. A brochure, available at the campus art museum, pictured the works in the exhibition and included a map identifying the location of each. The area chosen for the statue was not generally open for the display of art by the public or the Washburn community.

Within days of installation, Washburn began receiving calls, letters, and e-mails complaining about *Holier Than Thou*. Washburn staff and students, including appellants, told university officials they were deeply offended and hurt by the statue's negative portrayal of the Roman Catholic religion. Other

Catholics from across the nation also contacted Washburn to complain.  The Archbishop of Kansas City wrote to President Farley that he was "surprised and dismayed that the university would allow such a piece which many recognize as not only insensitive and insulting but even obscene."

In response to the controversy, President Farley issued a press release explaining his refusal to remove the statue from campus.  The press release read:

> One of the pieces on display this year has engendered much discussion.  People perceive and respond to art differently based on their individual backgrounds.  No one involved in the selection process or in any aspect of the Campus Beautification Committee intended for any viewers to experience pain or hurt.  We all regret if this has occurred.
> One of the purposes of art is to engage us intellectually and emotionally.  This work apparently has fulfilled that function as there is a wide variety of commentary on the piece, ranging from support to opposition.
> There is no solution that will be satisfactory to everyone at this point.  As a university, we should take this opportunity to create a positive educational experience.  Seminars can be organized surrounding this work of art and its symbolism.  Speakers could address the aesthetic elements, religious perspectives and issues facing contemporary religions.  Different points of view must and can be represented so the seminars are a valuable educational opportunity for the campus and the community.

Soon after President Farley's press release, the Campus Beautification Committee called a special meeting to discuss the issue.  During the meeting, committee members stated that they had not construed the statue to be anti-Catholic or the bishop's miter to be phallic when they selected it for exhibition.  Several days later, the Board of Regents met to decide whether *Holier Than Thou*

should be removed from campus. The board heard from speakers in support and in opposition to the statue. By a 5-2 vote, the regents decided to leave *Holier Than Thou* in place.

Appellants O'Connor and Strobl filed suit under § 1983, claiming the sculpture violated their rights under the Establishment Clause of the United States Constitution by conveying a message of state-sponsored disapproval of their religious beliefs. O'Connor is a tenured professor of biology at Washburn University. Strobl at the time the complaint was filed was a full-time student at Washburn who lived on campus at a student residence hall and served as president of the university's Catholic Campus Center. Both appellants are devout Catholics.

In their complaint, appellants claim the statue "mocks God the Father" and "attacks the sacrament of Penance, the ecclesiastical authority of the Roman Catholic Church, and the role Christ plays in the sacrament of Penance." They argue the contorted expression on the face of the statue, combined with a bishop's miter they believe represents a phallus, portrays the church in a negative light. Because Catholics believe that priests are "like the living image of God the Father," appellants contend that the statue mocks God as well as the Catholic religion. Furthermore, appellants claim the bishop depicted in the statue is in the act of administering the sacrament of Penance, a time when the priest is "in

persona Christi," or "in the person of Christ." The reference in the caption to the "persona you see before you," appellants argue, is therefore an attack on Christ.

Appellants requested a temporary restraining order, injunctive and declaratory relief, and nominal damages. The district court denied the motion for the temporary restraining order and by consent of the parties consolidated the preliminary injunction hearing with the trial on the merits. After a two-day hearing, the court entered judgment for defendants. Analyzing the question under the three-part test set forth by the Supreme Court in *Lemon v. Kurtzman*, the district court concluded that the context and content of the statue evinced the secular purposes of broadening the university's educational experience and beautifying the campus. 403 U.S. 602, 612-13 (1971). The court further concluded that a reasonable observer would not find that the statue had the primary effect of conveying a message of disapproval of the Roman Catholic religion, and that the context of an "outdoor museum" mitigated any possible anti-religious significance. O'Connor and Strobl appeal the district court's judgment.

Because the annual outdoor sculpture exhibition came to an end in July 2004, *Holier Than Thou* is no longer displayed on the Washburn campus.

## III. DISCUSSION

### A. Mootness

In their complaint, appellants request declaratory and injunctive relief, nominal damages, and reasonable costs and attorneys fees pursuant to 42 U.S.C. § 1988. Because the statue has now been removed from campus, the claim for injunctive relief is moot. *See Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 548 (10th Cir. 1997). Furthermore, because a declaratory judgment would no longer have any effect on defendants' behavior, the claim for declaratory relief is also moot. *Id.* at 548-49; *see also Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1256-57 (10th Cir. 2004) (holding that an action for declaratory relief was moot when the requested declaration involved past conduct that was not likely to recur).

Appellants argue prospective relief "is not necessarily mooted" because voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case unless defendants can show no reasonable expectation that the wrong will recur. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953). This is not a case, however, where the university has unilaterally changed its procedures in an effort to evade judicial review. Rather, as both parties have agreed, *Holier Than Thou* was removed from campus at the prearranged termination date of the annual sculpture exhibition. A defendant

-8-

cannot be said to have voluntarily ceased allegedly illegal conduct where, as here, the controversy has become moot through the normal course of events rather than through the unilateral action of the defendant. *See DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) (holding the voluntary cessation doctrine inapplicable in a challenge to law school admissions policies when mootness depended not on a unilateral change on the part of the defendant but instead on "the simple fact that [the plaintiff] [was] in the final quarter of the final year of his course of study").

The Supreme Court has also recognized a separate exception to mootness for cases "capable of repetition, yet evading review." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Appellants, however, have not shown that this case is capable of repetition because they have advanced no explanation as to how *Holier Than Thou* will return to the Washburn campus in the future. *See id.* at 482-83 (recognizing that the possibility of recurrence must be more than theoretical). Although it is conceivable that the university could bring some other religiously themed statue onto campus as part of a future sculpture exhibition, this court cannot resolve the constitutionality of a hypothetical future statue given that Establishment Clause questions are heavily dependent on the specific context and content of the display. *See Van Orden v. Perry*, No. 03-1500, 545 U.S. —, 2005 1500276, at *13 (June 27, 2005) (Breyer, J., concurring in the judgment) (noting that the constitutionality of a display is dependent on context).

The complaint, however, also includes a claim for nominal damages. An award of nominal damages is an appropriate remedy for a violation of the Establishment Clause. *See Searles v. Van Bebber*, 251 F.3d 869, 878-79 (10th Cir. 2001). Unlike the claims for injunctive and declaratory relief, this claim is not mooted by the removal of the statue from campus. *Utah Animal Rights Coalition*, 371 F.3d at 1257-58. This court therefore has jurisdiction to consider the nominal damages claim.

**B.     Standing**

Because it involves the court's power to entertain the suit, constitutional standing is a threshold issue in every case before a federal court. *United States v. McVeigh*, 106 F.3d 325, 334 (10th Cir. 1997). In order to have standing, a party invoking the court's authority "must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997) (quotation omitted). To demonstrate an adequate personal injury, a "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (quotations omitted).

In the context of alleged violations of the Establishment Clause, this court has held that "standing is clearly conferred by non-economic religious values." *Anderson v. Salt Lake City Corp.*, 475 F.2d 29, 31 (10th Cir. 1973). The Supreme Court requires, however, that plaintiffs alleging non-economic injury must be "directly affected by the laws and practices against which their complaints are directed." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 486 n.22 (1982) (quotation omitted). Allegations of personal contact with a state-sponsored image suffice to demonstrate this kind of direct injury. *Foremaster v. City of St. George*, 882 F.2d 1485, 1490-91 (10th Cir. 1989).

Because *Holier Than Thou* was displayed at a prominent location on campus between the student union and the main administrative building, both O'Connor and Strobl claim they were constantly exposed to its presence and were forced to alter their schedules and routes across campus to avoid it. O'Connor testified that the statue was directly between his office and the student union building, and that he was required to walk past it almost every week in order to attend meetings and social events. Strobl testified that the statue was located between his residence hall and the main administrative building, and that therefore he was required to alter his route in order to attend one of his classes, to

get postings for student organizations, to reach the registrar's office, and to handle his financial affairs at the school's business office.

Appellants' allegations that they were frequently brought into direct and unwelcome contact with the statue are sufficient to give them standing for an Establishment Clause challenge. *See id.*; *Books v. City of Elkhart*, 235 F.3d 292, 301 (7th Cir. 2000) ("We therefore conclude that a plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located."). Their allegations that they were forced to alter their behavior to avoid contact with the display, although not necessary for standing, further support this conclusion. *See Foremaster*, 882 F.2d at 1490-91. Both appellants have therefore alleged sufficient personal injury to challenge the constitutionality of the statue's placement on the Washburn campus.

## C. The Establishment Clause

### 1. Standard of Review

In cases arising under the First Amendment of the United States Constitution, this court reviews a district court's decision *de novo*. *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1230 n.7 (10th Cir. 1998) (en banc). In doing so, this court has an obligation to make an independent examination of the whole record. *Id.*

## 2. The Endorsement Test

The Establishment Clause of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. This prohibition applies to the states under the Fourteenth Amendment. *Everson v. Bd. of Educ.*, 330 U.S. 1, 14-15 (1947). The Supreme Court has interpreted the Establishment Clause to "mandate[] governmental neutrality between religion and religion, and between religion and nonreligion." *Epperson v. Arkansas*, 393 U.S. 97, 103-04 (1968). The Establishment Clause therefore prohibits not only state actions that advance religion, but also actions that are hostile toward religion. *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984).

In *Lemon*, the Supreme Court set forth a three-part test for determining whether a government action violates the Establishment Clause. *Lemon*, 403 U.S. at 612-13. Under this test, "government action does not violate the Establishment Clause so long as it (1) has a secular purpose, (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster an excessive entanglement." *Bauchman*, 132 F.3d at 551. Justice O'Connor offered a refined version of the *Lemon* test in her concurring opinion to *Lynch v. Donnelly*. 465 U.S. at 687-94 (O'Connor, J., concurring). Under Justice O'Connor's modified "endorsement test," "the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of

conveying a message that religion or a particular religious belief is favored or preferred." *Bauchman*, 132 F.3d at 551 (quotation omitted). In examining challenges to government action under the Establishment Clause, this circuit has interpreted the purpose and effect prongs of *Lemon* in light of Justice O'Connor's endorsement test. *Id.* at 552. A government action is examined under this standard regardless of whether it is alleged to endorse or disparage religion. *Roberts v. Madigan*, 921 F.2d 1047, 1053-54 (10th Cir. 1990). Appellants claim Washburn's placement of *Holier Than Thou* on campus had both the purpose and effect of conveying government disapproval of the Roman Catholic religion.[1]

While this appeal was pending, the Supreme Court decided two cases in which plaintiffs challenged on Establishment Clause grounds the constitutionality of displaying the Ten Commandments on monuments in public areas. *McCreary County v. ACLU*, 03-1693, 545 U.S. —, 2005 WL 1498988 (June 27, 2005); *Van Orden v. Perry*, No. 03-1500, 545 U.S. —, 2005 WL 1500276 (June 27, 2005). The plurality opinion in *Van Orden* upheld the constitutionality of one Ten Commandments display without a discussion of either the *Lemon* factors or the endorsement test. *See Van Orden*, 2005 WL 1500276, at *4 (plurality opinion). Furthermore, Justice Breyer's concurring opinion noted that "no single mechanical formula [] can accurately draw the constitutional line in every case."

---

[1]Appellants do not argue that Washburn's actions constitute an excessive entanglement with religion.

*Id.* at *12 (Breyer, J., concurring in the judgment). Until the Supreme Court overrules *Lemon*, however, it remains binding law in this circuit. In any case, the Supreme Court's recent opinions establish that an examination of the government actor's purpose, *see McCreary County*, 2005 WL 1498988, at *10, and the particular context of the display, *see Van Orden*, 2005 WL 1500276, at *13 (Breyer, J., concurring in the judgment), remain relevant considerations under the Establishment Clause. *See also McCreary County*, 2005 WL 1498988, at *21-22 (O'Connor, J., concurring) (applying the purpose prong of the endorsement test). This court will therefore continue to apply the *Lemon* test as modified by Justice O'Connor's endorsement test, while remaining mindful that there is "no test-related substitute for the exercise of legal judgment." *Van Orden*, 2005 WL 1500276, at *12 (Breyer, J., concurring in the judgment).

### 3. Purpose

The purpose prong of the endorsement test asks whether "the government's actual purpose is to endorse or disapprove of religion." *Bauchman*, 132 F.3d at 551 (quotation omitted). Appellants argue Washburn could have no legitimate secular purpose for placing a statue that mocks the religious beliefs of Catholics at one of the most prominent locations on campus. They further argue that, even if Washburn was unaware of the statue's anti-Catholic meaning at the time they chose to display it, the school's failure to remove the statue after receiving

-15-

complaints from Catholics itself establishes an illegitimate purpose. In applying the purpose prong, courts should look to "the traditional external signs that show up in the text, legislative history, and implementation of the statute, or comparable official act." *McCreary County,* 2005 WL 1498988, at *11 (quotations omitted). Accordingly, this court will examine the history of the statue's display in an attempt to determine whether the university's "ostensible and predominant purpose" in displaying the statue was to denigrate the Roman Catholic religion. *See id.* at *10.[2]

### a. The Selection of the Statue

Appellants have produced no evidence that anyone at the school chose the statue out of hostility toward the Catholic faith.[3] Greg Inkmann testified that

---

[2]In some situations, the Supreme Court has looked to the context and content of a government display and concluded that "the government action itself bespoke the purpose" of that action. *See McCreary County v. ACLU*, 03-1693, 545 U.S. —, 2005 WL 1498988, at *12 (June 27, 2005). In *McCreary County*, for example, the Supreme Court looked at the language in a Ten Commandments monument as well as the content of the surrounding display in determining that the state acted with an illegitimate purpose. *See id.* at *15-16. In this case, the context and content of the statue is relevant to the effect of the display in addition to the university's purpose. These factors will therefore be examined in Part III.C.4, *infra*. For the reasons outlined there, the context and content of *Holier Than Thou* do not suggest that the university's predominant purpose in displaying the work was to denigrate the Catholic faith.

[3]The purpose prong of the endorsement test focuses on the intent of the government actor in displaying a particular work of art, not on the intent of the artist in creating the work. *Summum v. City of Ogden*, 297 F.3d 995, 1010 (10th Cir. 2002). Even if the intent of the artist could somehow be imputed to the state,

(continued...)

when the three-person jury viewed the slides of *Holier Than Thou*, they did not discuss the resemblance of the bishop's miter to a phallus or any other possible anti-Catholic messages in the statue. When slides of the five sculptures selected by the jury were later shown to the entire Campus Beautification Committee, the minutes show no discussion of *Holier Than Thou*. Jeanette Bertelson, chair of the committee, testified that the statue "was considered to be a very fine piece of bronze, and that basically was it." Until she later heard about the complaints, Bertelson testified that she was not aware of any possible anti-Catholic message in the statue. Similarly, there was no discussion of any anti-Catholic or phallic symbolism when the slides were presented to President Farley for approval.

Washburn argues its decision to display *Holier Than Thou* was motivated by two purposes: 1) to enhance the university's educational experience, and 2) to beautify the campus. These justifications are consistent with both the educational goals of the university and the mission of the Campus Beautification Committee, and are further supported by the statements of those involved in the selection process. At the special Campus Beautification Committee meeting called after the onset of the controversy, committee members stated that they had seen nothing

---

[3](...continued) appellants produced no evidence that the creator of *Holier Than Thou* intended the statue to send an anti-Catholic message. In fact, the artist testified that he intended the statue to be a humorous remembrance of his first sacrament of Penance as a seven-year-old boy.

offensive in the statue and had based their decisions solely on the statue's quality as a piece of art. Bertelson later told the Board of Regents that works for the exhibit were chosen because they exhibited artistic quality, were composed of media appropriate for outdoor display, and were able to engage the viewer and initiate discussion.

Appellants dispute both of Washburn's purported justifications for displaying the statue. They cite the Seventh Circuit's opinion in *Freedom from Religion Foundation, Inc. v. City of Marshfield* for the proposition that campus beautification is not a sufficient secular purpose to withstand challenge under the Establishment Clause. 203 F.3d 487, 493 (7th Cir. 2000). The court in *Freedom from Religion Foundation* examined a fifteen-foot marble statue of Jesus Christ erected on public property and inscribed with the words "Christ Guide Us On Our Way" in twelve-inch block letters. *Id.* at 489. The court relied on *Gonzales v. North Township*, 4 F.3d 1412, 1421 (7th Cir. 1993), which held that the purpose of beautifying a public park could not supersede a monument's predominant religious purpose. *Freedom from Religion Found*, 203 F.3d at 493. Unlike *Freedom from Religion Foundation* and *Gonzales*, however, there is no evidence in this case that the government actor had any religiously motivated reason for displaying the statue in question. At least when there is no evidence of improper

motive, campus beautification is a permissible justification for displaying a work of art.

In response to Washburn's second purported justification, appellants argue that the university's goal of enhancing the school's educational environment was not served by displaying a piece of artwork hostile to a group of students on campus, and that the university could have better achieved its objective by displaying the statue in the campus art museum. Whether the university's chosen methods were the most effective possible means of achieving its goals, however, is irrelevant to the question whether the university was motivated by anti-Catholic intent. *See Lynch*, 465 U.S. at 681 n.7 ("The question is whether the display . . . violates the Establishment Clause.").

### b. The Display of the Statue

The university's decision to place the statue at a prominent location on campus does not demonstrate that it was motivated by an improper purpose. Inkmann testified that he chose the site because it had been used in previous exhibitions and because viewers would not be able to appreciate the work's fine details from a distance. He explained that he set the statue apart from others because he believed every statue "needs to be treated as an individual presence" and therefore "needs a certain amount of space." The statue was placed outdoors

instead of in a museum, as appellants would have preferred, simply because it was designed for outdoor display and was selected to be part of an outdoor exhibition.

Nor does the evidence show that the statue's caption was selected with anti-Catholic intent. The record establishes that the caption had not yet been placed on the statue at the time it was selected by the Campus Beautification Committee and approved by President Farley. The committee decided to place the statements of the artists on the exhibits not because of hostility toward Catholics, but because the statements in previous years had been put on brochures that were expensive to print and often wasted. There is no evidence that anything in the caption was motivated by an anti-Catholic purpose.[4]

### c. The Decision to Retain the Statue

In the absence of evidence showing an awareness by the university of any possible anti-Catholic message at the time the statue was selected and placed on campus, appellants argue the university's failure to remove the statue after receiving complaints in itself constitutes an improper purpose. A defendant's failure to change its behavior in accordance with plaintiffs' demands, however, is not in itself proof of anti-religious intent. *Bauchman*, 132 F.3d at 556 (rejecting a

---

[4]The artist testified that he intended the word "persona" in the caption in its ordinary meaning of a person's facade, not, as appellants contend, as a derogatory reference to the "persona Christi."

similar argument as a "'backdoor' attempt to substantiate an otherwise flawed constitutional claim").

Furthermore, there is no evidence in the record showing that the university's decision to retain the statue was based on improper motives. Instead, the evidence shows that the university chose to keep the statue for reasons unrelated to a disapproval of Catholicism. In the press release announcing his decision to retain the statue, President Farley explained that there was no solution that would satisfy everyone and that he wanted to take the "opportunity to create a positive educational experience." The meeting minutes of the Board of Regents disclose that their decision was based on a desire to promote freedom of speech and to avoid academic censorship. The minutes of the Campus Beautification Committee show that they were motivated by similar concerns. Even though the university was certainly aware of the statue's perceived anti-Catholic message at the time it decided to retain the statue, there is no evidence that it agreed with or endorsed this interpretation of the statue.

The evidence also demonstrates that the decision not to move the statue to a less prominent location on campus was not motivated by an anti-Catholic bias. The Campus Beautification Committee discussed the possibility of moving the statue to the campus art museum, but was told there was no room in the museum to accommodate the statue. Washburn's vice-president of academic affairs

testified that he also considered moving the statue but was told by complaining parties that nothing short of complete removal from campus would be acceptable. There is no countervailing evidence in the record indicating that the decision not to move the statue was made for illegitimate reasons.

After a thorough review of the record, this court concludes that appellants have presented no evidence in support of their view that Washburn selected or displayed the statue with the purpose of denigrating the Catholic religion. As in *Lynch*, the evidence in this case is simply insufficient "to establish that the [display] is a purposeful or surreptitious effort to express some kind of subtle governmental advocacy of a particular religious message." 465 U.S. at 680.

### 4. Effect

The "effect" prong of the endorsement test asks whether a reasonable observer aware of the history and context of the forum would find the display had the effect of favoring or disfavoring a certain religion. *Bauchman*, 132 F.3d at 551-52. The Constitution does not require, however, that the purpose of every government-sanctioned activity be unrelated to religion. *Id.* at 554 ("Courts have long recognized the historical, social and cultural significance of religion in our lives and in the world, generally."). Instead, the question of whether the government has endorsed a particular religious display depends in large part on the display's particular physical setting. *Lynch*, 465 U.S. at 671, 681-82, 685

-22-

(holding that a crèche in a holiday display did not violate the Establishment Clause because the display also contained secular objects); *see McCreary County*, 2005 WL 1498988, at \*14 ("[U]nder the Establishment Clause detail is key."); *Van Orden*, 2005 WL 1500276, at \*13 (Breyer, J., concurring in the judgment).

Appellants argue the statue's location next to a footpath at a prominent location on campus, in an area reserved for official use, would lead a reasonable observer to believe the state had endorsed its message. Appellants are correct that these factors weigh toward a finding of state endorsement. *See County of Allegheny v. ACLU*, 492 U.S. 573, 598 & n.48 (1989) (holding that a crèche's location in a prominent location distinct from any other decorations resulted in an unconstitutional endorsement of religion).

The effect prong of the endorsement test, however, presumes a reasonable observer "aware of the history and context of the community and forum" in which the display appears. *Sante Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 317 (2000) (quotation omitted); *see McCreary County*, 2005 WL 1498988, at \*14. The awareness of this reasonable observer is not limited to "the information gleaned simply from viewing the challenged display." *Wells v. City & County of Denver*, 257 F.3d 1132, 1142-43 (10th Cir. 2001) (quoting *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 780 (1995) (O'Connor, J., concurring in part and concurring in judgment)). The reasonable observer of *Holier Than Thou*

would therefore be aware that the statue was one of thirty outdoor sculptures displayed on the Washburn campus, of which several were located within sight of the challenged display. In addition, the existence of a brochure available in the campus art museum describing and mapping all the statues on campus would make it clear to a reasonable observer that the statues were part of a unified exhibit. The reasonable observer would also be aware that art in previous years had been placed at the location of *Holier Than Thou*, and that previous exhibitions had included at least one statue with religious symbolism.

Viewed in the context of these other statues, *Holier Than Thou* was part of a "typical museum setting" that, "though not neutralizing the religious content of a religious [work of art], negates any message of endorsement of that content." *Lynch*, 465 U.S. at 692 (O'Connor, J., concurring). A state is not prohibited from displaying art that may contain religious or anti-religious symbols in a museum setting. *See id.* at 676-77 & 677 n.4 (noting that the National Gallery in Washington exhibits more than 200 paintings with religious themes). A reasonable observer aware that the statue was part of an outdoor art exhibit would not believe the university endorsed the message of any particular piece of art within the exhibit. *See Van Orden*, 2005 WL 1500276, at *13 (Breyer, J., concurring in the judgment) (concluding that a monument containing the Ten Commandments did not violate the Establishment Clause when situated among a

group of seventeen monuments and twenty-one historical markers "designed to illustrate the ideals of those who settled in Texas and those who have lived there since that time" (quotation omitted)); *see also McCreary County*, 2005 WL 1498988, at \*17 (noting that the image on the Supreme Court's courtroom frieze of Moses holding the Ten Commandments would not strike an objective observer as taking a position on religion when accompanied by images of seventeen other lawgivers); *Brooklyn Inst. of Arts & Scis. v. City of New York*, 64 F. Supp. 2d 184, 205 (E.D.N.Y. 1999) ("[N]o objective observer could conclude that the . . . showing of the work of an individual artist which is viewed by some as sacrilegious constitutes endorsement of anti-religious views by the City or the Mayor.").[5]

In *Bauchman*, this court examined the question whether a school choir's performance of songs with religious themes constituted a violation of the

---

[5]Courts that have held particular works of art to violate the Establishment Clause have tended to focus on the relative isolation of the challenged work from other government-sponsored displays. *Freedom from Religion Found., Inc. v. City of Marshfield*, 203 F.3d 487, 495 (7th Cir. 2000) (holding that a statue in a public park violated the Establishment Clause when "[t]he park was created to display the statue, and the City present[ed] no evidence that other groups have ever used the park to present alternative messages"); *Washegesic v. Bloomingdale Pub. Schs.*, 33 F.3d 679, 681, 683 (6th Cir. 1994) (holding that a portrait of Christ in a public school violated the Establishment Clause when it was "not part of a group of paintings"); *Joki v. Bd. of Educ.*, 745 F. Supp. 823, 831 (N.D.N.Y. 1990) ("[T]his is not a case where the school displays the painting as part of a student art exhibit."). In contrast, *Holier Than Thou* is obviously part of a larger exhibit.

Establishment Clause. 132 F.3d at 546. The court considered the "traditional and ubiquitous presence of religious themes in vocal music," together with the inclusion of a variety of secular songs in the choir's repertoire, to conclude that a reasonable observer would not believe the school's music selection constituted an endorsement of religion. *Id.* at 555. Like music, sculpture has traditionally involved works with religious themes. This fact, combined with the Campus Beautification Committee's selection for the exhibition of four sculptures without obvious religious symbolism, would similarly lead the reasonable observer to conclude that the state did not intend to endorse a particular religious message. *See Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 839 (1995) ("[T]he guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse."); *Summum v. City of Ogden*, 297 F.3d 995, 1011 (10th Cir. 2002) ("[A] reasonable observer would . . . note the fact that the lawn of the municipal building contains a diverse array of monuments, some from a secular and some from a sectarian perspective.").

Furthermore, *Holier Than Thou* was displayed in the context of a university campus, a place that is "peculiarly the marketplace of ideas." *Healy v. James*, 408 U.S. 169, 180 (1972) (quotation omitted). In the university setting, "the State

acts against a background and tradition of thought and experiment that is at the center of our intellectual and philosophic tradition." *Rosenberger*, 515 U.S. at 835. As the Supreme Court recognized in *Rosenberger*, purging religious or anti-religious speech from a university setting would eliminate such speakers as Plato, Spinoza, Descartes, Karl Marx, Bertrand Russell, and Jean-Paul Sartre from the curriculum. *Id.* at 836-37; *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 759 (7th Cir. 2001). The Establishment Clause, however, does not compel the removal of religious themes from public education. Although the Court in *School District of Abington Township v. Schempp* held unconstitutional a state statute requiring daily Bible readings in public schools, the Court noted it did not intend to "indicat[e] that such study of the Bible or of religion, when presented objectively as part of a secular program of education, may not be effected consistently with the First Amendment." 374 U.S. 203, 225 (1963); *see also Stone v. Graham*, 449 U.S. 39, 42 (1980) (holding unconstitutional a state law requiring display of the Ten Commandments in public school classrooms but noting that religious themes "may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like").[6] Especially in the context of a university campus, no reasonable person would associate the

_____

[6]Appellants emphasize that public universities are not immune from challenge under the Establishment Clause. This court holds only that, in the context of an art exhibit on a university campus, the display of this statue does not violate the Establishment Clause.

message of *Holier Than Thou* with the state. *See Widmar v. Vincent*, 454 U.S. 263, 274 n.14 (1981) (noting that, as young adults, university students are "less impressionable than younger students and should be able to appreciate that the University's policy is one of neutrality toward religion").

The Seventh Circuit In *Linnemeir v. Board of Trustees of Purdue University* faced a situation similar to the present case in examining the Establishment Clause effect of a student-directed play called *Corpus Christi* at Purdue University. 260 F.3d at 758. The play contained content the court concluded would shock and offend most believing Christians, including a depiction of Jesus Christ having sex with his disciples. *Id.* The court nevertheless found no violation of the Establishment Clause, writing that "[t]he contention that the First Amendment forbids a state university to provide a venue for the expression of views antagonistic to conventional Christian beliefs is absurd." *Id.* at 759. As the court explained, "[i]f an Establishment Clause violation arose each time a student believed that a school practice either advanced or disapproved of a religion, school curricula would be reduced to the lowest common denominator, permitting each student to become a curriculum review committee unto himself." *Id.* (quotation omitted). Appellants attempt to distinguish *Linnemeir* on the ground that the play in that case was produced and run by students for class credit. Merely because *Holier Than Thou* was not

-28-

created for course credit, however, does not mean it was not part of Washburn's educational curriculum. Both President Farley and Washburn's vice-president of academic affairs testified that they strove to extend the educational environment at Washburn beyond the classroom to encompass various stimuli including art, theater, music, debate, athletics, and other activities.

Regardless of the context in which it is displayed, appellants argue that a reasonable observer would see the content of the statue—a depiction of a bishop with a grotesque expression, a representation of a phallus on his head, and the title *Holier Than Thou*—as a state-sponsored anti-Catholic message. Washburn counters that the statue's message is not anti-Catholic, but merely a representation of the artist's humorous memories of his first confession.[7] Ultimately, this court need not determine the proper interpretation of *Holier Than Thou*. Regardless of whether the statue sends an anti-Catholic message, any reasonable observer viewing it in context would understand the university had not endorsed that message. Washburn therefore did not violate the Establishment Clause by including the sculpture in its art exhibition. *See Lynch*, 465 U.S. at 679-80 (holding that the district court's consideration of a display's religious content

---

[7]There is evidence in the record that, while some viewers were offended by *Holier Than Thou*, others did not perceive a phallic symbol or other anti-Catholic message. The unusual seams on the statue's miter have also plausibly been interpreted as a representation of two fish. The effect prong of the endorsement test, however, is a question of law that this court decides without reference to the reactions of individual viewers. *Bauchman*, 132 F.3d at 555.

without reference to its context was in error); *Anderson*, 475 F.2d at 32 ("[T]he Government may depict objects with a spiritual content, but it may not promote or give its stamp of approval to such spiritual content." (quotation omitted)).

## IV. CONCLUSION

For the foregoing reasons, this court **DISMISSES** the claims for injunctive and declaratory relief for lack of jurisdiction and **VACATES** the judgment of the district court as to those claims. This court **AFFIRMS** the judgment of the district court as to the claim for nominal damages.



04-3103, *O'Connor v. Washburn*
**TYMKOVICH**, J., concurring.

I fully concur in the majority opinion.  I write separately to express my belief that our Circuit's mootness jurisprudence should be reexamined.  In this case, we apply—as we must—two on-point Circuit cases in concluding the appeal is not moot.  *Searles v. Van Bebber*, 251 F.3d 869, 878-79 (10th Cir. 2001); *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1257-58 (10th Cir. 2004).  But the conduct complained of here has long ceased: the statute has been removed; there is no threat of its return; no one is now being offended.  Yet this appeal survives by virtue of a request for nominal damages.  In *Utah Animal Rights Coalition*, a panel of the Court debated this very question in two compelling concurring opinions.  *See* 371 F.3d at 1262-1271 (McConnell, J., concurring); 371 F.3d at 1271-1275 (Henry, J., concurring,).  I will not repeat those arguments here other than to suggest that federal court jurisdiction should not be exercised in a First Amendment case such as this one where the behavior of the litigants cannot be affected by our resolution of the appeal.  I hope the United States Supreme Court or an en banc panel of this Court soon has the opportunity to address this important question.