FILED
United States Court of Appeals
Tenth Circuit

November 18, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CANDACE AGUILERA,

    Plaintiff - Appellant,

v.

CITY OF COLORADO SPRINGS, a
municipality; DANIELLE MCCLARIN,
in her official and individual capacity;
ANGIE NEIVES, in her official and
individual capacity; ROGER
VARGASON, in his official and individual
capacity; BRETT LACEY, in his official
and individual capacity; ROBERT
MITCHELL, in his official and individual
capacity,

    Defendants - Appellees.

No. 19-1398
(D.C. No. 1:18-CV-02125-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **MORITZ**, Circuit Judges.
_____

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Candace Aguilera appeals pro se from the district court's order dismissing her civil-rights complaint and denying her leave to amend. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In her seventy-page first amended complaint, Aguilera alleges the following. On the morning of July 10, 2017, Colorado Springs Police Officer Roger Vargason and Fire Marshalls Danielle McClarin and Angie Nieves confronted her outside of "GreenFaithMinistry," a "non-denominational spiritual/religious establishment" and retailer of "religious goods." R. at 116, 131. Aguilera is the "Property manager, Volunteer, High Priestess (second minster [sic] in command), member, etc. who leases two rooms at the Establishment." *Id.* at 120.[1]

Fire Marshall McClarin explained they wanted inside to "check the occupancy of the building." *Id.* at 120. Aguilera refused, telling them, "If you want in the building you will have to contact Reverend Baker, I will not let you in." *Id.* Fire Marshall McClarin responded, "If you do not let us in, nobody will be allowed in." *Id.* at 121. While Fire Marshall McClarin attempted to call Reverend Baker, Aguilera apparently went inside and locked the entry door.

A few minutes later, Officer Vargason pulled forcefully on the door, telling the "GreenFaithMinistry members and volunteers [inside] to '[o]pen the door.'" *Id.* at 127.

---

[1] Security camera photos included in the amended complaint indicate that GreenFaithMinistry is in a business/strip-mall type location, with other structures located nearby across an alleyway or street. Aguilera does not indicate the purpose for which she leases the rooms inside GreenFaithMinistry.

When Aguilera came to the door, Officer Vargason warned her that "[i]f [she] d[id] not open th[e] door, [she] w[ould] be in trouble." *Id.* at 128. He again tried to pull open the door. Aguilera said, "this is private property do you have a warrant?" *Id.* Officer Vargason replied, "Oh now I am talking to Rob Corry (Marijuana lawyer out of Denver)." *Id.* at 128. Officer Vargason continued pulling, stating, "[W]e know you have an illegal grow in there." *Id.* Officer Vargason's final "order to . . . Aguilera was to 'Praise the Lord.'" *Id.* at 129.

The officers remained at GreenFaithMinistry for forty-five minutes. During that time, several other GreenFaithMinistry members arrived. Fire Marshall Nieves asked one such member "[i]f marijuana [wa]s being consumed inside the building." *Id.* at 134. Those members felt "intimidated," so they "turn[ed] around and le[ft]." *Id.* at 126. Before the officers finally left, Officer Vargason used a cell phone to take "pictures of Members['] license plates, including the vehicle that . . . Aguil[e]r[a] drives." *Id.* at 133.

Aguilera filed this 42 U.S.C. § 1983 pro se lawsuit in August 2018.[2] She alleges in confusing fashion that the defendants violated her "absolute natural rights and the constitutions which expressively mandates [sic] its compliance and restricts any opposition by any government and anything below it without contest via absolute natural rights, Art. 6, Clause 2 Supremacy Clause, Constitutions, Free Exercise Clause, etc." *Id.*

---

[2] In addition to suing the City of Colorado Springs and the officers who confronted her on July 10, 2017, Aguilera also sued two individuals not present that day—Brett Lacey and Robert Mitchell. They allegedly "worked in concert" as the "Head Fire Marshall" and El Paso County Sheriff's Lieutenant, respectively, to violate Aguilera's rights. *Id.* at 117-18; *see also id.* at 256.

3

at 158. Further, she alleges that the defendants' actions caused her and "four other church members/volunteers[ ] [to] vacate their place of worship," *id.* at 123-24, and that the City of Colorado Springs "targeted non-denominational GreenFaithMinistry to insure [that] monetary contributions for police and the fire dep[ar]t[ment] services continue from neighboring [Christian] religious establishments." *Id.* at 115-16. She seeks declaratory, injunctive, and monetary relief.

The defendants moved to dismiss, asserting qualified immunity. The district court granted the motions and dismissed all of Aguilera's claims. Doing so, it construed Aguilera's complaint as advancing claims under (1) the First Amendment for violations of the Establishment and Free Exercise Clauses, and (2) the Fourth Amendment for unlawful search and seizure.[3]

To the extent Aguilera asserted her claims on behalf of GreenFaithMinistry and other members, the district court concluded she lacked standing. As for her Establishment Clause claim, the district court determined it failed the three-part test of *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). Her Free Exercise claim failed, the district court said, because she did not allege that any defendant burdened her ability to exercise a religious belief. Regarding her search-and-seizure claim, the district court determined there were no allegations the defendants actually conducted a search, and there was no seizure of property because the defendants did not meaningfully interfere

---

[3] We conclude that the district court accurately distilled the nature of Aguilera's first amended complaint.

4

with her possessory interests.[4]  Finally, the district court denied Aguilera's motion for leave to amend the complaint because she failed to comply with the meet-and-confer requirements of the local rules.

## DISCUSSION
### I.  Standards of Review

We review de novo the district court's grant of a motion to dismiss on the grounds of standing, *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996), and qualified immunity, *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010).

"In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).  "If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity."  *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

---

[4] Although the district court did not discuss Aguilera's claims against the City of Colorado Springs and the officers in their official capacities, its dismissal order covers those claims.  "[A]n official-capacity suit brought under § 1983 generally represents only another way of pleading an action against an entity of which an officer is an agent."  *Moss v. Kopp*, 559 F.3d 1155, 1168 n.13 (10th Cir. 2009) (brackets and internal quotation marks omitted).  And without "a constitutional violation by the individual . . . officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability."  *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1156 (10th Cir. 2001).

In deciding whether the complaint should be dismissed, we evaluate the complaint to see if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wittner v. Banner Health*, 720 F.3d 770, 774-75 (10th Cir. 2013) (internal quotation marks omitted). But "we are not bound to accept as true a legal conclusion couched as a factual allegation," and "we consider only the facts alleged in [Aguilera's] [a]mended [c]omplaint." *Id.* We do "not consider allegations or theories [asserted in her appellate briefs] that are inconsistent with those pleaded in the complaint." *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

Although we construe Aguilera's filings liberally, we do not serve as her advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## II. Standing

"The doctrine of standing . . . requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks omitted). Thus, "[o]rdinarily, a party must assert h[er] own legal rights and cannot rest h[er] claim to relief on the legal rights of third parties." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (ellipsis and internal quotation marks omitted).

Aguilera acknowledges in her opening brief that she is not suing to vindicate the rights of GreenFaithMinistry and its other members. *See* Aplt. Opening Br. at 37.[5] Thus,

---

[5] At the same time, she maintains that "Appellees are incorrect when they say you cannot sue for others." Reply Br. at 1. We do not reach this dispute. Article III

6

the district court did not err in dismissing Aguilera's claims without prejudice "to the extent [she] assert[ed] [them] on behalf of others." R. at 576.

### III. Establishment Clause

Aguilera argues that Officer Vargason violated the Establishment Clause by ordering her to "Praise the Lord."[6] Aplt. Opening Br. at 41. The Establishment Clause prohibits "law[s] respecting an establishment of religion." U.S. Const. amend. I. In particular, it "mandate[s] governmental neutrality between religion and religion, and between religion and nonreligion." *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1223 (10th Cir. 2005) (internal quotation marks omitted).

"To assess an Establishment Clause challenge, we follow the tripartite test from *Lemon v. Kurtzman*," which provides that "government action does not violate the Clause

---

of the Constitution limits our power to hear cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1. It does not confer jurisdiction over disputes that are purely academic. *See Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240-41 (1937) (observing that there "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts"). Given Aguilera's representation that she "include[d] GreenFaithMinistry and Members to show" only that "[her] rights were clearly violated," Aplt. Opening Br. at 37, her dispute with Defendants-Appellees concerning third-party standing is purely academic.

[6] "[T]he requirements for standing to challenge state action under the Establishment Clause . . . do not include proof that particular religious freedoms are infringed." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 224 n.9 (1963). Rather, the plaintiff can show standing by asserting a "direct[ ] affect[ ]" from the "practice[ ] against which [her] complaint[ ] [is] directed." *Id.*; *see also Montesa v. Schwartz*, 836 F.3d 176, 197 (2d Cir. 2016) (stating that "direct exposure standing" can occur where "a plaintiff is personally confronted with a government-sponsored religious expression that directly touches the plaintiff's religious or non-religious sensibilities"). We conclude that Aguilera's allegation of being ordered to "Praise

if (1) it has a secular purpose; (2) its principal or primary effect is one that neither advances nor inhibits religion; and (3) it does not foster an excessive government entanglement with religion." *Medina v. Catholic Health Initiatives*, 877 F.3d 1213, 1230 (10th Cir. 2017) (internal quotation marks omitted).[7] The purpose and effect prongs "look[ ] through the eyes of an objective observer, aware of the purpose, context, and history of the government action in question." *Id.* at 1230-31 (internal quotation marks omitted).

In order to survive a motion to dismiss, a plaintiff asserting an Establishment Clause violation "must allege facts which, accepted as true, suggest a violation of any part of th[e] [*Lemon*] analysis." *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 552-53 (10th Cir. 1997). "We will not infer an impermissible purpose or effect in the absence of any supporting factual allegations." *Id.* at 553.

---

the Lord" confers standing to assert an Establishment Clause violation under a direct-exposure theory.

[7] The Supreme Court has recently cast doubt on the viability of the *Lemon* test, stating that it "presents particularly daunting problems in cases . . . that involve the use, for ceremonial, celebratory, or commemorative purposes, of words or symbols with religious associations." *Am. Legion v. Am. Humanist Assoc.*, 139 S. Ct. 2067, 2081 (2019) (plurality opinion). *American Legion* does not, however, offer a replacement test. Rather, it encourages the "application of a presumption of constitutionality for longstanding monuments, symbols, and practices." *Id.* at 2081-82. In any event, Aguilera's allegation that she was ordered to "Praise the Lord" appears to fall outside of *American Legion*'s repudiation of *Lemon* in religious-display cases.

## A. Secular Purpose

Aguilera's amended complaint does not allege facts indicating that an objective observer would view Officer Vargason's purpose in saying "Praise the Lord" as an official endorsement of religion. Specifically, the phrase "Praise the Lord" can be uttered solely as a personal affirmation of religious or even non-religious gratitude, and not "with the ostensible and predominant purpose of advancing religion," *McCreary County v. Am. Civ. Liberties Union*, 545 U.S. 844, 860 (2005). Aguilera fails to identify any allegation supporting her assertion that Officer Vargason intended the phrase as a directive for her to worship a deity. Further, the phrase was uttered in the midst of a secular investigation concerning the building's occupancy and suspected use as an illegal marijuana establishment. "We will not lightly attribute unconstitutional motives to the government, particularly where we can discern a plausible secular purpose." *Medina*, 877 F.3d at 1230 (internal quotation marks omitted).

## B. Effect

Similarly, the amended complaint is devoid of allegations showing that Officer Vargason's mere utterance of "Praise the Lord" would have the principal or primary effect of advancing or inhibiting religion. In particular, no facts are alleged under which an objective observer, aware of the officers' secular investigational purpose, would conclude that the phrase "convey[ed] a message that religion or a particular religious belief is favored or preferred." *Medina*, 877 F.3d at 1231 (internal quotation marks omitted). The effect prong "does not forbid all mention of religion," and it does not take

9

into account "whether particular individuals might be offended by the content" of a government actor's message "or consider [that message] to endorse religion." *Bauchman*, 132 F.3d at 555.

## C.     Entanglement

Nor does Aguilera allege that Officer Vargason's utterance of "Praise the Lord," "foster[ed] an excessive government entanglement with religion." *Id.* at 1233.  This prong of the *Lemon* test ensures that religious organizations retain "independence from secular control or manipulation" in "matters of church government as well as those of faith and doctrine."  *Id.* at 1234 (internal quotation marks omitted).  Without an allegation that Officer Vargason's use of "Praise the Lord" somehow constituted "state involvement with recognized religious activity," the entanglement prong is not met.  *See Bauchman*, 132 F.3d at 556.

## D.     Conclusion

We conclude that the district court did not err in dismissing Aguilera's Establishment Clause claim, as she has not plausibly alleged a constitutional violation under any prong of the *Lemon* test.  *Cf., e.g.*, *Wood v. Arnold*, 915 F.3d 308, 315 (4th Cir.) ("[I]f courts were to find an Establishment Clause violation every time that a student or parent thought that a single statement by a teacher either advanced or disapproved of a religion, instruction in our public schools would be reduced to the lowest common denominator." (internal quotation marks omitted)), *cert. denied*, 140 S. Ct. 399 (2019).

## IV.  Free Exercise Clause

Aguilera argues that Fire Marshall McClarin violated the Free Exercise Clause by "threaten[ing] [her]" outside GreenFaithMinistry when he said, "If you do not let us in, nobody will be allowed in." R. at 120-21.  According to Aguilera, that threat "made . . . [her] and four other church members/volunteers[ ] vacate their place of worship." *Id.* at 123-24; *see* Aplt. Opening Br. at 44.

"To establish a free-exercise claim, [Aguilera] must show that the government has placed a burden on the exercise of h[er] religious beliefs or practices." *Fields v. City of Tulsa*, 753 F.3d 1000, 1009 (10th Cir. 2014).  "A plaintiff states a claim that h[er] exercise of religion is burdened if the challenged action is coercive or compulsory in nature." *Id.* (alteration and internal quotation marks omitted).

Aguilera's own allegations belie the coercive or compulsory nature of Fire Marshall McClarin's threat.  She alleges that immediately after Fire Marshall McClarin made the threat, she went inside GreenFaithMinistry and locked the entry door behind her.  Indeed, she remained inside with the door locked, refused to open it even as Officer Vargason pulled on it and told her to open it, and she declared, "this is private property do you have a warrant?" R. at 128.  It is unclear when she finally exited GreenFaithMinistry.  Given these allegations, Aguilera has failed to assert a connection between Fire Marshall McClarin's threat (even when viewed together with Officer Vargason's actions) and her decision to vacate GreenFaithMinistry.  Significantly, Aguilera has not alleged that Fire Marshall McClarin (or any other officer) ever ordered her to vacate the building.

11

Nevertheless, Aguilera argues the constitutional violation is clear in light of *Sause v. Bauer*, 138 S. Ct. 2561 (2018). There, the Supreme Court explained that the Free Exercise Clause may have been violated by a police officer's order to the plaintiff, while he was inside her apartment investigating a noise complaint, to stop praying. *Id.* at 2562-63. The Court said it was "impossible to analyze [the plaintiff's] free exercise claim" without knowing whether officers were lawfully inside her apartment and "what, if anything, the officers wanted her to do at the time when she was allegedly told to stop praying." *Id.* at 2563. Thus, the Court reversed and remanded for further proceedings.

But *Sause* has no apparent application here. Aguilera does not assert in her complaint that she was ordered to stop praying or worshipping in any manner. Nor does she allege that she was engaged in prayer or worship inside GreenFaithMinistry at any time during the officers' presence outside the building. Further, as discussed below, the officers were lawfully present on the porch outside GreenFaithMinistry when they communicated with Aguilera.

In short, Aguilera has failed to allege that any defendant burdened her exercise of religious beliefs or practices. Thus, the district court did not err in dismissing her Free Exercise claim.

## V. Fourth Amendment

The Fourth Amendment prohibits unreasonable searches and seizures. *New York v. Burger*, 482 U.S. 691, 699 (1987). A plaintiff asserting a Fourth Amendment violation must either have "a legitimate expectation of privacy in the place searched or the item seized," *United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002) (internal

12

quotation marks omitted), or identify an "unprivileged trespass on property expressly protected by the Fourth Amendment—persons, houses, papers, and effects—for the purpose of conducting a search or seizure," *United States v. Carloss*, 818 F.3d 988, 992 n.2 (10th Cir. 2016) (internal quotation marks omitted).

## A.    Search

Aguilera contends that Officer Vargason engaged in an unlawful Fourth Amendment search by photographing her vehicle and its license plate. At the time Officer Vargason took the photos, he was standing on GreenFaithMinistry's porch, with Aguilera's vehicle parked only a few feet away, off of what appears to be an alleyway or street, with other buildings/businesses nearby. Aguilera has not pled a plausible Fourth Amendment violation for the following reasons.

First, she has no expectation of privacy in the appearance of her vehicle or its license plate, with her car parked in public view off of a street or alleyway. *See New York v. Class*, 475 U.S. 106, 114 (1986) ("The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'"); *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989) ("[B]ecause they are in plain view, no privacy interest exists in license plates.").

Second, although Officer Vargason took the photos from GreenFaithMinistry's porch, his vantage point did not convert his photo-taking into a search. The amended complaint is not entirely clear as to whether he and the fire marshalls were at GreenFaithMinistry to check compliance with administrative occupancy standards, to investigate illegal marijuana sales, or both. In any event, the Fourth Amendment is not

13

implicated where officers are on private property and perform a so-called "knock and talk." *See United States v. Shuck*, 713 F.3d 563, 568 (10th Cir. 2013) (holding that "officers did not violate the Fourth Amendment when they approached [a] trailer's back door with an intent to speak to its occupants regarding the reported odor of marijuana" and saw in plain view a PVC pipe that smelled of marijuana). "Observations made from such vantage points are not covered by the Fourth Amendment." *Id.* at 567 (brackets and internal quotation marks omitted); *see also Carloss*, 818 F.3d at 993 ("The mere purpose of discovering information in the course of engaging in [a knock and talk] does not cause it to violate the Fourth Amendment."). Thus, Officer Vargason did not need a warrant to photograph Aguilera's license plate while on GreenFaithMinistry porch.[8]

---

[8] Aguilera's reliance on *Collins v. Virginia*, 138 S. Ct. 1663 (2018), is misplaced. In that case, the Supreme Court held that a warrant is required to search a vehicle that is within the curtilage of a home, notwithstanding the automobile exception to the warrant requirement. *Id.* at 1670-71. The Court rested its decision on "the core Fourth Amendment protection afforded to the home and its curtilage." *Id.* at 1671. Here, Aguilera's vehicle was not parked within the curtilage of a home. *See Oliver v. United States*, 466 U.S. 170, 180 (1984) (explaining that the curtilage "is the area to which extends the intimate activity associated with the sanctity of a [person's] home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes" (internal quotation marks omitted)). Rather, her vehicle was parked off of an alleyway or street, in a non-residential area, and next to GreenFaithMinistry, a "non-denominational spiritual/religious establishment" and retailer of "religious goods." R. at 116, 131.

Also, Aguilera argues on appeal that Officer Vargason's photo-taking constituted a search because he used "his police issued phone," which "can run apps / programs" that provide "access to [a] [d]atabase that [is] not accessible by the public." Aplt. Opening Br. at 48. Because these allegations are not in the amended complaint, we do not consider them. *See Hayes*, 264 F.3d at 1025. We likewise do not consider Aguilera's allegation that the photo-taking unlawfully disclosed her "association in a non[]profit." Aplt. Opening Br. at 48.

**B.      Seizure**

Aguilera contends that Fire Marshall McClarin's threat, "If you do not let us in, nobody will be allowed in," "illegally seize[d] [GreenFaithMinistry] in violation of the 4th [A]mendment." Aplt. Opening Br. at 44. We conclude that Aguilera has standing to advance this claim to the extent it is based on her leasing of two rooms in the building. But she fails to allege that any defendant meaningfully interfered with her possessory interests in the building. *See United States v. Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018) (observing that "a Fourth Amendment 'seizure' occurs when there is some meaningful government interference with an individual's possessory interests in property" (alterations and internal quotation marks omitted)). As we have already observed, following Fire Marshall McClarin's alleged threat, Aguilera entered the building, locked the door, excluded the officers, and then later exited the building without being asked to leave. Thus, no Fourth Amendment seizure occurred.

**C.      Conclusion**

The district court did not err in dismissing Aguilera's Fourth Amendment claims for illegal search and seizure.

## VI.  Motion to Amend

"We review for abuse of discretion the district court's denial of [Aguilera's] motion to file an amended complaint." *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010). The district court denied the motion because she failed to confer with opposing counsel before filing the motion, as required by District of Colorado Local Civil Rule 7.1(a), which states that "[b]efore filing a motion, counsel for the moving party or

15

an unrepresented party shall confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter."

Although Aguilera states in her opening appellate brief that she would like to amend her complaint, she does not address the district court's rationale for denying her leave to amend. She therefore waived any challenge to that decision. *See Sylvia v. Wisler*, 875 F.3d 1307, 1332 (10th Cir. 2017) ("An issue or argument insufficiently raised in the opening brief is deemed waived." (internal quotation marks omitted)).

## CONCLUSION

Because Aguilera's amended complaint fails to plausibly allege a constitutional violation against any of the individual defendants, the district court properly applied qualified immunity and dismissed the complaint. We therefore affirm the district court's judgment.

We deny as moot Aguilera's motion to file an appendix, given that all the documents she seeks to include are already included in the record on appeal. We grant attorney Peter A. Lichtman's motion to withdraw as counsel of record for Defendant-Appellee Mitchell.

Entered for the Court

Nancy L. Moritz
Circuit Judge

16