RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0191p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DARRYL O. MASON,

          *Plaintiff-Appellant*,

    *v.*

ADAMS COUNTY RECORDER, et al.,

          *Defendants-Appellees*.

No. 17-3605

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:16-cv-00755—William O. Bertelsman, District Judge.

Argued:  January 31, 2018

Decided and Filed:  August 28, 2018

Before:  BOGGS, CLAY, and KETHLEDGE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Zachary Gottesman, GOTTESMAN & ASSOCIATES, LLC, Cincinnati, Ohio, for Appellant.  Mark Landes, ISAAC WILES BURKHOLDER & TEETOR, LLC, Columbus, Ohio, for Appellees.  **ON BRIEF:**  Zachary Gottesman, GOTTESMAN & ASSOCIATES, LLC, Cincinnati, Ohio, Robert J. Thumann, CREHAN & THUMANN, LLC, Cincinnati, Ohio, for Appellant.   Mark Landes, J. Stephen Teetor, Robert C. Perryman, ISAAC WILES BURKHOLDER & TEETOR, LLC, Columbus, Ohio, William P. Lang, Cleveland, Ohio, Amy Ikerd, MERCER COUNTY PROSECUTOR, Celina, Ohio, Pamela J. Sears, Michael G. Florez, Eric A. Munas, HAMILTON COUNTY PROSECUTOR, Cincinnati, Ohio, Jeffrey C. Turner, Dawn M. Frick, Kevin A. Lantz, SURDYK, DOWD & TURNER, CO., L.P.A., Dayton, Ohio, Randall L. Lambert, LAMBERT LAW OFFICE, LLC, Ironton, Ohio, Nick A. Soulas, Jr., Jason S. Wagner, FRANKLIN COUNTY PROSECUTOR, Columbus, Ohio, Jason A. Fountain, G. Ernie Ramos, Jr., CLERMONT COUNTY PROSECUTOR, Batavia, Ohio, for Appellees Ohio County Recorders and Miami County Engineer.  John A. Borell, Kevin A. Pituch, LUCAS COUNTY PROSECUTOR, Toledo, Ohio, for Appellee Lucas County Recorder.

BOGGS, J., delivered the opinion of the court in which CLAY and KETHLEDGE, JJ., joined.  CLAY, J. (pg. 7), delivered a separate concurring opinion.

--------------------

**OPINION**

--------------------

BOGGS, Circuit Judge.  This is a civil-rights case, brought under the Fair Housing Act, 42 U.S.C. § 3604(c); 42 U.S.C. § 1983; and 42 U.S.C. § 1985, challenging the maintenance of records that contain racially restrictive covenants such as deeds, plat maps, and other real-estate documents maintained by county recorders throughout the state of Ohio.

Plaintiff-Appellant, Darryl Mason, seeks injunctive relief to compel all Ohio county recorders to stop printing and publishing historical documents that contain racially restrictive covenants, to remove all such records from public view, and to permit the inspection and redaction of such documents.  The district court granted Defendants-Appellees' motions to dismiss under Fed. R. Civ. P. 12(b)(6) on grounds that Mason lacked standing.  We agree that Mason lacked standing and affirm.

I

Mason is an African-American resident of Hamilton County, Ohio. Mason filed suit against all 88 Ohio county recorders for violating the Fair Housing Act's ("the Act") prohibition against making, printing, or publishing "any . . . statement" indicating a racial preference, such as a racially restrictive covenant.  County recorders are responsible for keeping all records relating to land title, which include deeds, easements, restrictive covenants, mortgages, plats, maps, and land surveys.  O.R.C. § 317.08.  The Act makes it unlawful:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

Mason's complaint included copies of 29 land records, recorded between 1922 and 1957, that contain racially restrictive covenants. However, there is no evidence or allegation that any of the covenants have been enforced since 1948, when the Supreme Court prohibited courts from enforcing racially restrictive covenants in *Shelley v. Kraemer*, 334 U.S. 1 (1948).

Mason maintains that the practice of county recorders to permit documents with restrictive covenants in the chain of title to be recorded or maintained and then make these documents available to the public violates the Act's prohibition against "making, printing, or publishing" any "notice, statement, or advertisement" with respect to "the sale or rental of a dwelling" that indicates any preference, limitation, or discrimination based on race. 42 U.S.C. § 3604(c). Mason states that Ohio's county recorders have made no effort to redact, remove, cover, or otherwise conceal unlawful racially restrictive covenants in land records, in violation of § 3604(c).

Mason alleges that defendants "have discouraged the Plaintiff and others from purchasing real estate affected by restrictive covenants by creating a feeling that they are unwelcome or do not belong in certain neighborhoods" and that defendants' actions "damage and cloud the title to property owned by property owners . . . by discouraging potential buyers." There is no allegation in the record that Mason intended to purchase, rent, or otherwise pursue any property, although at oral argument Mason's counsel stated that Mason had become aware of these racially restrictive covenants while he was looking to buy property, a fact not contained in the complaint and or otherwise added to the record prior to the filing of the Rule 12(b)(6) motions to dismiss.

The district court held that Mason lacked standing for three reasons. First, a plaintiff must show that he suffered a palpable economic injury distinct to himself. The district court held that Mason did not suffer an actual or threatened injury because Mason nowhere alleged that he intended to buy or rent or pursue any property. And, even if he had made such allegations, the restrictive covenants are no longer legally enforceable, and therefore Mason could not suffer any harm. Second, the alleged injury was not caused by the county recorders, but by the drafters of the restrictive covenants and the county recorders are required by Ohio statute to furnish these documents to the public. Third, county recorders cannot redress the alleged harm, as they have no statutory authority to edit documents after filing or while maintaining them.

II

The doctrine of standing is a threshold constitutional question of justiciability. Article III judicial power "exists only to redress or otherwise protect against injury to the complaining party." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). The Supreme Court has set forth three elements necessary for a plaintiff to have standing to bring suit.

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (second and third alterations in original) (citations omitted).

Although in general standing may also be restricted in other ways, standing under the Act is "as broad as permitted by Article III of the Constitution." *Wilson v. Glenwood Intermountain Props.*, 98 F.3d 590, 593 (10th Cir. 1996). This breadth arises from the exercise of congressional power under the Thirteenth Amendment to eliminate the badges and incidents of slavery. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439-40 (1968). Given the Congressional intent to extend standing to the full limits of Article III, the Supreme Court has held, "the courts accordingly lack the authority to create prudential barriers to standing in suits brought under" the Act. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). Regardless of breadth, a party must always allege the minimum Article III requirements that he has "suffered a distinct and palpable injury to himself, that is likely to be redressed if the requested relief is granted." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (citation omitted). This "case or controversy" requirement is a prerequisite to a person having the right to seek judicial relief.

The question of whether Mason suffered an actual or threatened individualized injury is at the heart of this appeal. Mason's complaint does not address his intent or lack of intent to buy

or rent property. To establish economic injury, it could have been sufficient for Mason to allege that he was interested in a property in a particular county, examined some records, and was discouraged from buying or renting a property by reading the restrictive covenants. He did not have to identify a specific property to gain standing. But, Mason did not allege any economic harm at all.

Mason's complaint also sets forth a non-economic claim that defendants "discouraged [him] and others from purchasing real estate affected by restrictive covenants by creating a feeling that they are unwelcome or do not belong in certain neighborhoods." Whether that "feeling" amounts to a concrete injury is a serious question. *See Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 459-60 (6th Cir. 2017) (holding that feelings of "discomfort" or "resentment" were not concrete cognizable injuries); *see also Allen v. Wright*, 468 U.S. 737, 754 (1984) (recognizing that the "stigmatizing injury often caused by racial discrimination . . . . is one of the most serious consequences of discriminatory government action and is sufficient in some circumstances to support standing"), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *accord Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015); *Smith v. City of Cleveland Heights*, 760 F.2d 720, 722 (6th Cir. 1985).

But that allegation cannot support Mason's standing for another reason: it is not particularized to him. "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted). Here, Mason failed to allege that any racially restrictive covenant affected him in a personal way. Instead, he sued every county recorder in the state of Ohio, claiming generally that keeping such covenants on the books violates federal law. Indeed, on appeal, Mason says that his purported injury is to his "interests in the government following the laws it passes" and "is arguably shared by every resident of the state [of Ohio]." Such an "undifferentiated, generalized grievance about the conduct of government" cannot give him standing. *See Lance v. Coffman*, 549 U.S. 437, 439-42 (2007) (per curiam).

Any reliance on *Havens Realty,* 455 U.S. 363, and *Gladstone,* 441 U.S. 91, is misplaced. Those cases "upheld standing based on the effects of discrimination only within a 'relatively

compact neighborhood[.]'" *See Havens Realty*, 455 U.S. at 377 (citation omitted). Mason has not alleged a discriminatory effect on any "compact neighborhood," let alone one to which he is connected. *See ibid.* Hence, *Havens Realty* and *Gladstone* give him no shelter.

In ancient Rome, the practice of *damnatio memoriae,*[1] or the condemnation of memory, could be imposed on felons whose very existence, including destruction of their human remains, would literally be erased from history for the crimes they had committed. Land title documents with racially restrictive covenants that we now find offensive, morally reprehensible, and repugnant cannot be subject to *damnatio memoriae*, as those documents are part of our living history and witness to the evolution of our cultural norms. Mason's feeling of being unwelcomed may be real. A feeling cannot be unfelt. But Mason's discomfort at the expression of historical language does not create particularized injury. The language in question is purely historical and is unenforceable and irrelevant in present-day land transactions.

The judgment of the district court is AFFIRMED.

---

[1]*See*, e.g., Lauren H. Petersen, *The Presence of "Damnatio Memoriae" in Roman Art*, SOURCE: NOTES IN THE HISTORY OF ART, Winter 2011, at 1.

———————————

**CONCURRENCE**

———————————

CLAY, Circuit Judge, concurring. I concur in the judgment and, for the most part, in the opinion's analysis, but I do not entirely agree with the majority's suggestion that we cannot, under appropriate circumstances, modify or dispense with documents that are "part of our living history and witness to the evolution of our cultural norms." Justice may require us to repudiate or revise elements of our "living history" if those elements—whether they be public records, flags, or statues—are shown to encourage or perpetuate discrimination or the badges and incidents of slavery; indeed, racial epithets that were once accepted as commonplace have not been preserved, and they have sometimes been stricken from our modern vernacular. We apply an even stricter standard where, as here, the government is the source of, or has ratified, language that has the purpose or effect of encouraging racial animus. We need not erase our history in order to disarm its harmful legacy, but victims of invidious discrimination who have suffered particularized injury as a result of the application of historical language should be able to seek redress, consistent with the context and the factual circumstances of their cases.

I also fear that the majority's statement that "Mason's discomfort at the expression of historical language does not create particularized injury" could be misunderstood or taken out of context to suggest that feelings of discomfort with racially discriminatory language could *never* create a cognizable injury. I do not, however, read the majority opinion as foreclosing a properly pleaded claim arising out of such racially discriminatory language, especially under circumstances that implicate governmental instrumentalities. Rather, I read the opinion to hold that the plaintiff in this action has simply failed to plead sufficient facts to demonstrate a legally cognizable injury. If and when a plaintiff shows such an injury, this Court will have to reconcile the importance of maintaining our recorded history with our vision of government speech that promotes—not hinders—a free and equal society. I do, however, respectfully concur.