Justice BREYER, with whom Justice KAGAN joins, concurring.
I have long maintained that there is no single formula for resolving Establishment Clause challenges. See Van Orden v. Perry , 545 U.S. 677, 698, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005) (opinion concurring in judgment). The Court must instead consider each case in light of the basic purposes *2091 that the Religion Clauses were meant to serve: assuring religious liberty and tolerance for all, avoiding religiously based social conflict, and maintaining that separation of church and state that allows each to flourish in its "separate spher[e]." Ibid. ; see also Zelman v. Simmons-Harris , 536 U.S. 639, 717-723, 122 S.Ct. 2460, 153 L.Ed.2d 604 (2002) (BREYER, J., dissenting).
I agree with the Court that allowing the State of Maryland to display and maintain the Peace Cross poses no threat to those ends. The Court's opinion eloquently explains why that is so: The Latin cross is uniquely associated with the fallen soldiers of World War I; the organizers of the Peace Cross acted with the undeniably secular motive of commemorating local soldiers; no evidence suggests that they sought to disparage or exclude any religious group; the secular values inscribed on the Cross and its place among other memorials strengthen its message of patriotism and commemoration; and, finally, the Cross has stood on the same land for 94 years, generating no controversy in the community until this lawsuit was filed. Nothing in the record suggests that the lack of public outcry "was due to a climate of intimidation." Van Orden , 545 U.S. at 702, 125 S.Ct. 2854 (BREYER, J., concurring in judgment). In light of all these circumstances, the Peace Cross cannot reasonably be understood as "a government effort to favor a particular religious sect" or to "promote religion over nonreligion." Ibid. And, as the Court explains, ordering its removal or alteration at this late date would signal "a hostility toward religion that has no place in our Establishment Clause traditions." Id., at 704, 125 S.Ct. 2854.
The case would be different, in my view, if there were evidence that the organizers had "deliberately disrespected" members of minority faiths or if the Cross had been erected only recently, rather than in the aftermath of World War I. See ante, at 2089 - 2090; see also Van Orden , 545 U.S. at 703, 125 S.Ct. 2854 (opinion of BREYER, J.) (explaining that, in light of the greater religious diversity today, "a more contemporary state effort" to put up a religious display is "likely to prove divisive in a way that [a] longstanding, pre-existing monument [would] not"). But those are not the circumstances presented to us here, and I see no reason to order this cross torn down simply because other crosses would raise constitutional concerns.
Nor do I understand the Court's opinion today to adopt a "history and tradition test" that would permit any newly constructed religious memorial on public land. See post, at 2092, 2093 - 2094 (KAVANAUGH, J., concurring); cf. post, at 2101 - 2102 (GORSUCH, J., concurring in judgment). The Court appropriately "looks to history for guidance," ante, at 2087 (plurality opinion), but it upholds the constitutionality of the Peace Cross only after considering its particular historical context and its long-held place in the community, see ante, at 2089 - 2090 (majority opinion). A newer memorial, erected under different circumstances, would not necessarily be permissible under this approach. Cf. ante, at 2085.
As I have previously explained, "where the Establishment Clause is at issue," the Court must " 'distinguish between real threat and mere shadow.' " Van Orden , 545 U.S. at 704, 125 S.Ct. 2854 (opinion concurring in judgment) (quoting School Dist. of Abington Township v. Schempp , 374 U.S. 203, 308, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Goldberg, J., concurring)). In light of all the circumstances here, I agree with the Court that the Peace Cross poses no real threat to the values that the Establishment Clause serves.