RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0215p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KARLA BRINTLEY,

*Plaintiff-Appellee*,

v.

AEROQUIP CREDIT UNION (18-2326); BELLE RIVER
COMMUNITY CREDIT UNION (18-2328),

*Defendants-Appellants*.

┐
│
│
│
│  Nos. 18-2326/2328
│
│
│
│
┘

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:17-cv-13912; 2:17-cv-13915—Arthur J Tarnow, District Judge.

Argued: August 8, 2019

Decided and Filed: August 27, 2019

Before: GILMAN, SUTTON, and WHITE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Joseph A. Starr, STARR, BUTLER, ALEXOPOULOS & STONER, PLLC, Southfield, Michigan, for Appellants. Richard H. Hikida, PACIFIC TRIAL ATTORNEYS, P.C., Newport Beach, California, for Appellee. **ON BRIEF:** Joseph A. Starr, William R. Thomas, STARR, BUTLER, ALEXOPOULOS & STONER, PLLC, Southfield, Michigan, for Appellants. Scott J. Ferrell, David W. Reid, PACIFIC TRIAL ATTORNEYS, P.C., Newport Beach, California, Jennifer B. Salvatore, SALVATORE PRESCOTT & PORTER, Northville, Michigan, for Appellee. Patricia Corkery, MICHIGAN CREDIT UNION LEAGUE, Lansing, Michigan, Christine A. Samsel, BROWNSTEIN HYATT FARBER SCHRECK, LLP, Denver, Colorado, for Amici Curiae.

SUTTON, J., delivered the opinion of the court in which GILMAN and WHITE, JJ., joined. WHITE, J. (pg. 8), delivered a separate concurring opinion.

---

**OPINION**

---

SUTTON, Circuit Judge.   Karla Brintley sued two credit unions under the Americans with Disabilities Act, claiming that they failed to make their websites accessible to blind individuals.   But Brintley never suffered an Article III injury from the alleged ADA violations. Why?   She lacks eligibility under state law to join either credit union and her complaint does not convey any interest in becoming eligible to do so.   We therefore reverse the district court's contrary decision.

I.

Karla Brintley lives in Michigan and is blind.   To navigate the internet, she uses a screen reader.   The software works like it sounds:   It scans webpages and narrates their contents.   The technology remains in its infancy.   It struggles with some material, especially pictures and video unaccompanied by alternative text.   With some effort, companies can make their websites fully screen-reader compatible.   But not all companies have taken that step.

Enter Aeroquip Credit Union and Belle River Community Credit Union.   Established under Michigan law, these domestic credit unions provide a range of financial services to their members, including checking and savings accounts, loans, credit cards, and mortgages.   Both credit unions maintain a limited brick-and-mortar presence.   And both of them operate websites containing information about their membership eligibility and services.   Brintley tried to browse these websites a few times but found her screen reader unable to process some of their content.

An acknowledged "tester" of website compliance with the Americans with Disabilities Act, Brintley sued the credit unions in federal court under the Act and its Michigan state-law counterpart.   She sought compensatory and injunctive relief on the theory that the websites were a "service" offered through a "place of public accommodation," entitling her to the "full and equal enjoyment" of the websites.   42 U.S.C. § 12182(a).   The credit unions moved to dismiss the claims, arguing that Brintley failed to satisfy Article III standing.   The district court rejected each motion.

II.

The United States Constitution empowers federal courts to decide "Cases" or "Controversies." U.S. Const. art. III, § 2. Embedded in this limitation is the imperative that claimants establish Article III standing to bring a claim. To meet this "irreducible constitutional minimum," Brintley must show three things: that she sustained an injury in fact, that she can trace the injury to the credit unions' conduct, and that a decision in her favor would redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Today's case turns on the first of these criteria, injury in fact. As to that, Brintley must show an invasion of a "legally protected interest" that is both "concrete and particularized" and "actual or imminent." *Id.* at 560. Not only must her injury be "real," but it also must affect her in some "personal and individual way." *Id.* at 560 n.1.

The credit unions did not injure Brintley. The key problem is that state law barred her from receiving any of the credit unions' financial services. Under Michigan law, domestic credit unions may assist only those falling within a narrow "field of membership" based on one or more "common bonds." Mich. Comp. Laws § 490.352. What are common bonds? Think shared community interests like a common occupation, a common religious identity, or a common place of residence. *Id.* Brintley isn't within any of these fields of membership, and her complaint never says that she plans to change that reality any time soon.

Two of our sister circuits recently considered nearly identical cases, and each one dismissed the claims for this precise reason. The Fourth Circuit resolved the issue in this way: "[W]e address only whether this plaintiff *who is barred by law from making use of defendant's services* may sue under the ADA for an allegedly deficient website. The answer to this narrow question here is no." *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019); *see also Carroll v. Nw. Fed. Credit Union*, 770 F. App'x 102, 104 (4th Cir. 2019). The Seventh Circuit did likewise: "[A] plaintiff who is *legally barred* from using a credit union's services cannot demonstrate an injury that is either concrete or particularized." *Carello v. Aurora Policemen Credit Union*, No. 18-2887, 2019 WL 3072152, at *2 (7th Cir. July 15, 2019). Nothing about Brintley's case counsels a different outcome.

By way of response, Brintley offers several possible ways to satisfy the injury-in-fact requirement. None does the trick.

Despite the barrier imposed by Michigan law, Brintley says in her amended complaint that she "wants to avail herself of [the credit unions'] banking services." R. 35 at 5–6. But she never says that she has made any efforts to become eligible. What the Court said in *Lujan* applies here: "[T]he affiants' profession of an 'inten[t]' . . . without any description of concrete plans, or indeed even any specification of *when* that someday will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564. Brintley's amended complaint does not contain the sorts of "concrete plans" that could elevate her intent into an injury a federal court could hear. There is no indication, for instance, that she has any plan to move to St. Clair County (to become eligible for Belle River Community Credit Union) or to apply for a job at Aeroquip Corporation (to become eligible for Aeroquip Credit Union). We have no authority to imagine the dots that she might one day connect to create an injury in fact. What matters now is that she has no plans to become a member of either credit union or otherwise obtain the status that would allow her to do so.

Brintley worries that this approach makes too much of the constraints imposed by Michigan law. After all, she says, the Americans with Disabilities Act doesn't impose a "client," "customer," or "patron" requirement. Appellee's Br. 14–15. That is not quite true. The truth is that the Supreme Court has reserved judgment on the point. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 679 (2001). But even if Brintley turns out to be right on this score, this conclusion would bear only on her *statutory* standing to seek relief, not her Article III standing. *See Roberts v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011). Consistent with this distinction, other courts have permitted non-client parties to bring claims only when they independently established injury in fact. *See, e.g.*, *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 122 (3d Cir. 1998) (holding that a non-employee doctor with staff privileges at a hospital had standing to sue the hospital under the Act). There's no reason to ignore that requirement today.

What of the possibility that she wants to access the websites in full to determine whether to become a member of either credit union? Just as sighted individuals who are not members may wish to check out the websites to determine whether to become members, Brintley claims

she should have the same right. Yes and no. Yes, if she claimed an interest in joining one of the credit unions, she would be on the same footing as a sighted individual engaged in the same inquiry. But no, that is not her position. She has not conveyed any intent to join either credit union. And just as a sighted individual with no inclination to join a union could not raise, say, an Age Discrimination in Employment Act claim about a credit union's hypothetical age-based membership policies, so she cannot bring an ADA claim. *See Griffin*, 912 F.3d at 655 (holding that a plaintiff's injuries can't be particularized without a "connection between the plaintiff and the defendant" not common to the general public).

Brintley separately urges us to hold that the websites' inaccessibility causes a freestanding informational harm. Set aside the fact that this argument was not raised before the district court. *See In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001). And set aside our prior skepticism about this argument's premises. *See Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010 (6th Cir. 1997) (en banc) (holding that "places of public accommodation" must be "physical"). No matter, the argument does not work on its own terms.

A procedural violation of an informational entitlement does not by itself suffice to keep a claim in federal court. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). To prevail, Brintley would need to allege at least that the information had "some relevance" to *her*. *Griffin*, 912 F.3d at 654; *see Carello*, 2019 WL 3072152, at \*3–4; *see also Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 707 (6th Cir. 2009). But nothing in the amended complaint supports that conclusion.

Brintley persists that the websites offer an "array of services," such as facility locators and financial calculators. Appellee's Br. 25. How, she asks, could such information "not be useful" to a non-member? *Id.* We can think of a few answers. Perhaps she had no desire to use these tools anyway. Perhaps she had no reason to care about their results. Perhaps they duplicate information elsewhere online. More to the point, Brintley's question isn't for us to answer. She had the burden to allege some real interest in the information. Failing to do so deprives us of power over the matter.

She argues alternatively that, even if the websites' information would not have provided any help to her, it still might have been "useful to share with her friends or family." *Id.* at 26. This argument adds nothing to her last. What information? What friends and family members? Does she know *anyone* for whom the websites' information might have special relevance? We don't know. This position merely adds more speculation to the mix.

Brintley adds that the websites' inaccessibility qualifies as a concrete (if intangible) dignitary injury under Article III. It's true that "dignitary harm" and "stigmatic injury" might give rise to standing in some settings. *See Allen v. Wright*, 468 U.S. 737, 755 (1984). But to qualify, a plaintiff can't simply suffer an "abstract" slight; she must be "personally subject to the challenged discrimination." *Id.* at 755–56. That's why a "black person in Hawaii" lacks standing to challenge a "racially discriminatory school in Maine." *Id.* at 756. To hold otherwise would "risk exceeding the judiciary's limited constitutional mandate" and "interfering with powers committed to other branches of government." *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2099 (2019) (Gorsuch, J., concurring). Mere indignation and mere affront are not sufficiently particularized injuries under Article III, whether the claimant purports to be a "tester" or not. *See Griffin*, 912 F.3d at 653–54; *Carello*, 2019 WL 3072152, at *2. Otherwise, any citizen would have had standing to challenge the lawfulness of the bombing of Cambodia in 1973. *Cf. Schlesinger v. Holtzman*, 414 U.S. 1321, 1321 (1973); *see also Holtzman v. Schlesinger*, 484 F.2d 1307, 1315 (2d Cir. 1973). Or: "anyone who goes to see Asian elephants in the Bronx zoo" would have standing to sue about a government-funded "project in Sri Lanka." *Lujan*, 504 U.S. at 566. This would reduce standing to an "ingenious academic exercise in the conceivable." *United States v. SCRAP*, 412 U.S. 669, 688 (1973).

Brintley's injury is simply too attenuated to support standing. The internet is a vast and often unpleasant place. It contains plenty that may offend, and those who set out *looking* for dignitary slights won't be disappointed. But merely browsing the web, without more, isn't enough to satisfy Article III. And whatever that "more" may entail, Brintley doesn't have it. Michigan law prevents Brintley from acquiring services from these credit unions, a legal boundary that makes it "impossible" for her to be "personally subject" to dignitary injury. *See Griffin*, 912 F.3d at 654; *see also Carello*, 2019 WL 30752152, at *2–3.

Hold up, Brintley says.  Unlike the hypothetical in *Allen*, she *actually visited* the websites at issue and "personal[ly] encounter[ed]" discrimination.  Appellee's Br. 37 & n.20.  True enough.  But not all "encounters" are of a kind.  If we adopted Brintley's theory of encounter standing, we'd deputize her to sue not just these credit unions but many of the some 5,600 others in the United States as well.  *See* Credit Union Nat'l Ass'n & Mich. Credit Union League Amicus Br. 1.  Never mind how geographically remote.  Never mind how attenuated their relationship.  And if we credit Brintley's statistics on visual impairment, we'd permit eight million other Americans to do the same.  That's not the law.  Standing aims to prevent the federal judiciary from becoming a "vehicle for the vindication of the value interests of concerned bystanders."  *SCRAP*, 412 U.S. at 687.  Those who merely peruse websites that they can't benefit from have less in common with bystanders than they do with passersby.

Brintley adds that the Supreme Court has adopted a uniquely "broad view" of standing in civil rights actions such as this one.  Appellee's Br. 6.  Accordingly, she suggests that testers like her, acting as "private attorneys general," are entitled to special solicitude in an Article III standing analysis.  *Id.* at 7.  True, courts generally read civil rights statutes to extend *statutory* standing to a wide range of parties.  *See Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 208 (1972).  True also, tester status doesn't have a "negative effect" on a plaintiff's ability to sue.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982).  But neither observation gives Brintley a pass to skip the ordinary constitutional requirements to suing in federal court.  *See Havens*, 455 U.S. at 374–75; *Trafficante*, 409 U.S. at 209; *see also Mason v. Adams Cty. Recorder*, 901 F.3d 753, 756 (6th Cir. 2018).  And if anything, the Supreme Court's recent standing jurisprudence has only further "tightened the hatches" on what qualifies as injury in fact.  *Vonderhaar v. Village of Evendale*, 906 F.3d 397, 401 (6th Cir. 2018); *see generally Spokeo*, 136 S. Ct. 1540.

We reverse.

————————————

**CONCURRENCE**

————————————

HELENE N. WHITE, Circuit Judge, concurring.  I concur in the reversal.  I write separately to make clear that my concurrence is based only on Brintley's failure to sufficiently allege that the websites contained information or services that she could use, and not on the proposition that a non-member or non-eligible person is per se unable to challenge the accessibility of a credit union's website.