**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-11937

_____

EARL M. JOHNSON, JR.,

*Plaintiff-Appellant,*

*versus*

MAYOR, CITY OF JACKSONVILLE,
GOVERNOR, STATE OF FLORIDA,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:21-cv-00726-MMH-PDB

_____

Before JILL PRYOR, GRANT, and TJOFLAT, Circuit Judges.

GRANT, Circuit Judge:

Confederate memorials are a pressure point. Some say they are significant historical markers that should remain undisturbed—preserved, even. Others are deeply offended by what they see as

outdated and offensive reminders of a shameful time in our history. Still others likely give the question little thought.  Earl M. Johnson, Jr. falls in the middle group, and he asked for a judicial decree that any use of city or state tax dollars supporting a public place with a Confederate name—streets, schools, and the like—violates his statutory and constitutional rights.

Like those who came before him seeking to force the government to preserve these memorials, Johnson lacks standing to sue.  The political branches—not the federal courts—are the forum for his challenge.  His disgust, no matter how deep and how sincere, is not the kind of injury that can give rise to a lawsuit. Indeed, what Johnson seeks is not the removal of the monuments or street names, but a declaration that they are wrong.  Because he has not suffered a concrete injury unique to him, he does not have standing to ask for that relief.  And with no case or controversy before us, even a statement that we agreed with Johnson would be hollow.  We affirm the district court's dismissal of his lawsuit.

## I.

Earl M. Johnson, Jr., a black resident of the Middle District of Florida, is a descendant of slaves "then-held in Confederate states."[1]    In his complaint, Johnson points to nearly fifty

---

[1] Because this case comes to us in a facial challenge on a motion to dismiss, we evaluate Johnson's standing "based on the facts alleged in the complaint." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).  We accept the factual allegations as true, construing them in his favor. *Morrison v. Amway Corp.*, 323 F.3d 920, 924–25 n.5 (11th Cir. 2003).

"monuments and naming tributes to the Confederacy and White supremacists on tax-funded public land." The list includes parks, schools, streets, a courthouse mural, and a government building flying the Confederate battle flag. Nine of these are in Duval County, which forms a consolidated government with the City of Jacksonville. *See* Jacksonville Charter, § 1.101; Ordinance 2010-616-E. Among them are the Florida Confederate Soldiers Memorial Pedestal at City Park, Monument to Women of the Confederacy at City Park, Yellow Bluff Fort Monument at State Park, Confederate Point Road, Confederate Street, Stonewall (Jackson) Street, (Stonewall) Jackson Street, (Jefferson) Davis Street, and Jefferson (Davis) Street.[2]

Johnson says that he has visited or traveled on most of the locations identified in the complaint. Doing so left him "deeply repulsed, disheartened, and intimidated by" what he calls "governmental celebrations of White supremacy," affirmations that "encourage the incitement of intimidation and violence against Black Americans." But Johnson alleges no specific connection between a violent incident and any of these landmarks; nor does he claim to have taken any alternate routes to avoid the displays or roadways.

---

[2] The City points out that two memorials, the Florida Confederate Soldiers Memorial Pedestal and Monument to Women of the Confederacy, were removed in 2023. Constrained as we are by the facial nature of the City and State's attack on Johnson's complaint, however, we accept his allegations as true. *See Morrison*, 323 F.3d at 924–25 n.5.

4                      Opinion of the Court                  23-11937

In a five-count complaint, proceeding pro se, Johnson sued Florida Governor Ron DeSantis and Jacksonville Mayor Lenny Curry in their official capacities under 42 U.S.C. § 1983.[3] He sought a declaratory judgment that both the City and the State violated Title II of the Civil Rights Act, the Thirteenth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as well as 42 U.S.C. § 1981, by maintaining the Confederate memorials on public land with taxpayer dollars.[4] *See* Declaratory Judgment Act, 28 U.S.C. § 2201(a).

A magistrate judge recommended dismissing Johnson's complaint for lack of standing, concluding that he had failed to satisfy Article III's requirement of a particularized injury because he alleged only a generalized grievance. Were it otherwise, the magistrate judge warned, "any traveler in the Middle District of Florida offended by any Confederate-related street name, school name, or county name or by any Confederate-related memorial, monument, mural, building, or program on government property" could sue the government for violating his rights. The magistrate judge also determined that Johnson lacked standing to sue as a state or municipal taxpayer because he had neither shown a direct injury

---

[3] Lawsuits against public officials in their official capacities operate as the functional equivalent of suits against the government when the government is the "real, substantial party in interest." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (quotation omitted).

[4] Johnson has abandoned his § 1981 claim on appeal. *See United States v. Campbell*, 26 F.4th 860, 872–73 (11th Cir. 2022) (en banc).

nor demonstrated that taxpayer funds were used to maintain the memorials.[5]

Johnson filed objections to the magistrate judge's report and recommendation, but provided no legal or factual basis for any of his disagreements. Instead, he listed the magistrate judge's conclusions and stated that he objected. Consider objection number two: "Plaintiff objects to the finding that 'Mr. Johnson fails to allege facts sufficient to establish ordinary or taxpayer standing, this Court lacks subject-matter jurisdiction, and dismissal is warranted.'" And so on, for each of Johnson's objections.

The district court adopted the magistrate judge's report and recommendation in large part, dismissing Johnson's complaint. The court first observed that Johnson had not properly objected to the report, because his objections to the magistrate judge's recommendation were not specific enough under Federal Rule of Civil Procedure 72(b)(2). *See United States v. Schultz*, 565 F.3d 1353, 1359–60 (11th Cir. 2009); 11th Cir. R. 3-1.

Even so, the court analyzed Johnson's standing de novo and agreed that his allegations were insufficient. The court then declined to address whether Johnson failed to state a claim or to consider the defendants' alternative arguments.

After some procedural back and forth—including dismissal of Johnson's appeal for lack of prosecution—this appeal followed.

---

[5] In the alternative, the magistrate judge concluded that Johnson failed to state a claim.

## II.

We review jurisdictional questions de novo. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999).

## III.

"Jurisdiction is power to declare the law." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). Without it, we "cannot proceed at all." *Id.* "[N]o matter how weighty or interesting" a lawsuit may be, Article III requires us to evaluate our jurisdiction before turning to the merits. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc). One bedrock part of that requirement is that each plaintiff must have standing to sue—an appropriate "personal stake" in the case. U.S. Const. art. III, § 2; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotation omitted).

To have standing, a plaintiff must show three things: (1) an injury in fact (2) that was caused by the defendant and (3) that can be redressed by a court. *See United States v. Texas*, 599 U.S. 670, 676 (2023). This case, like so many others, is primarily about the injury requirement, especially the need for the alleged harm to be "concrete and particularized." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) (en banc) (quotation omitted). An injury is concrete "if it actually exists— that is, if it is real, and not abstract." *Id.* (quotation omitted). Federal courts are not "vehicle[s] for the vindication of the value interests of concerned bystanders." *Allen v. Wright*, 468 U.S. 737, 756 (1984) (quotation omitted).

An injury must also be particularized in the sense that it affects the plaintiff "in a personal and individual way"—the alleged harm, in other words, cannot be generalized or undifferentiated. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quotation omitted). So when a plaintiff's asserted injury is "shared in substantially equal measure by all or a large class of citizens," that's not enough. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Simply put, a "generalized grievance, no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013) (internal quotation marks omitted).

And standing is more than a procedural speed bump before the merits: it is a constitutional mandate "built on a single basic idea—the idea of separation of powers." *Allen*, 468 U.S. at 752. Resolving only those disputes where a plaintiff has standing ensures that the judiciary stays in our constitutional lane, not encroaching on the prerogatives of the political branches. *See United States v. Texas*, 599 U.S. at 675–76.

## A.

Johnson's asserted injury is neither concrete nor particularized. First, concreteness. Johnson alleges that he feels "deeply repulsed" and "disheartened" by the "governmental celebrations of White supremacy" embodied in the monuments and tributes. The same goes for streets with Confederate monikers, which he says burden his liberty because they "abridge central precepts of equality." But the "psychological consequence presumably produced by observation of conduct with which one

disagrees" has long been held insufficient to establish an Article III injury. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–86 (1982). Johnson's sweeping allegations of harm are the very sort of abstract and non-concrete injury that federal courts have rejected time and again. *E.g.*, *Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 40 (1976); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) (en banc); *Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020).

Our decision in *Ladies Memorial Ass'n v. City of Pensacola* drives home the point. 34 F.4th 988 (11th Cir. 2022). There, we rejected the argument that the removal of a Confederate memorial inflicted a concrete injury. *See id.* at 993. "[P]urely psychic injuries, like disagreeing with government action," or "a mere recitation that the Government is violating one's constitutional rights," we explained, "fall short of the concreteness standard" required to confer standing. *Id.*; *see also Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80–81 (2019) (Gorsuch, J., concurring in the judgment). So too here.

To be sure, that those plaintiffs sought to *preserve* a Confederate monument offers a factual distinction between their claim and Johnson's. But that viewpoint differential changes nothing about the nature of the claimed injuries; each is based on disagreement with government action. And pure disagreement with government action (or inaction), no matter how strong or sincerely held, is not a concrete injury.

Nor is Johnson's injury particularized—it's a hallmark generalized grievance. The "repulsion" and "intimidation" that he experienced are felt by *all* those offended by Confederate memorials, and Johnson pleaded nothing distinguishing him "from other interested observers" or placing him "among the injured." *Gardner*, 962 F.3d at 1343 (quotation omitted). Though he attempts to "describe a personal, emotional injury," the core of his claim is that he is upset by the local government's failure to excise Confederate symbolism and names from public places. *See Quinn v. Sec'y of State, Ga.*, 175 F.4th 1309, 1315 (11th Cir. 2026). Put differently, Johnson cannot show that he is more than a concerned bystander seeking to vindicate his "value interests"—again, no matter how deeply held. *Allen*, 468 U.S. at 756 (quotation omitted).

Once more, the Confederate memorial cases from the other direction are instructive. Take *Gardner v. Mutz*. There, we concluded that plaintiffs who opposed the removal of a Confederate memorial lacked standing because their alleged injuries were "undifferentiated, collective," and "not distinct to any of the plaintiffs." 962 F.3d at 1342–43 (quotation omitted). Other courts have reached the same conclusion. *See, e.g.*, *McMahon v. Fenves*, 946 F.3d 266, 271–72 (5th Cir. 2020); *Albert Sidney Johnston Chapter, Chapter No. 2060 v. City of San Antonio*, 14 F.4th 329, 332 (5th Cir. 2021). The same is true here, where Johnson has not identified any fact that makes his alleged injury different from that of scores of other would-be plaintiffs who feel hurt by the memorials.

Relying on slender support from some of our precedents, Johnson disagrees. He says the district court's conclusion that he has not suffered a concrete and particularized injury flouts this Court's precedent in *Sierra v. City of Hallandale Beach*, 996 F.3d 1110 (11th Cir. 2021), as well as our now-vacated decision in *Laufer v. Arpan LLC*, 29 F.4th 1268 (11th Cir. 2022), *opinion vacated and appeal dismissed as moot*, 77 F.4th 1366 (11th Cir. 2023). We take the cases in reverse order. Though we disagree with Johnson's *Laufer* argument, we need not consider it because, as this Court has explained, vacated opinions "have no legal effect whatever" and "are void"—it is as if they were never written. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc). Moving on to *Sierra*, that opinion held that a "humiliated, embarrassed, and frustrated" deaf plaintiff had standing to sue under the Americans with Disabilities Act and Rehabilitation Act because a city did not include closed captioning on some of its online videos. 996 F.3d at 1111–12, 1114 n.4. That, we said, inflicted a "stigmatic" injury on Sierra. *Id.* at 1114. Building on that already expansive holding, Johnson insists that "looming tributes" to the Confederacy in the Middle District inflict comparable stigmatic harm on him as an African American.

We do not agree.

Although discrimination can inflict non-economic "stigmatic harm," that injury is only concrete if the person is "personally subject to discriminatory treatment." *Allen*, 468 U.S. at 757 n.22; *see also Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984). In

*Allen v. Wright*—the Supreme Court's paradigmatic stigmatic-harm case—the plaintiff parents lacked standing to sue over the tax-exempt status of racially discriminatory private schools because they failed to "allege a stigmatic injury suffered as a *direct result of having personally been denied* equal treatment." 468 U.S. at 755 (emphasis added). So those very sympathetic plaintiffs could not bring suit to stop discrimination because their own children had not been denied admission to a school on the basis of their race.

In *Sierra*, the plaintiff was on a different footing for a few reasons. To start, Sierra at least alleged that he was denied information, rather than relying only on his psychological harm. *See* 996 F.3d at 1111–12. We also underscored that the plaintiff was "*personally* and *directly* subjected to discriminatory treatment when Hallandale Beach published videos on its website that he accessed but could not understand." *Id.* at 1114 (emphasis added). In other words, unlike in *Allen*, the plaintiff had (at least arguably) suffered the alleged harm in a concrete and individual way. Moreover, the panel emphasized that this Court had "already recognized" damages for emotional distress under the Rehabilitation Act. *Id.* at 1114 n.4.

Not so here.

Though we do not question the sincerity of Johnson's objections, his "deep repulsion and intimidation" at Confederate-named "parks, buildings, schools, courthouses, streets, [and] roads" do not personally subject him to "discriminatory treatment." *Id.* at 1114. Far from it. Disagreement with the names of public

thoroughfares and the like is the very definition of an insufficiently personal, generalized grievance—"no matter how sincere" Johnson's pain may be. *Hollingsworth*, 570 U.S. at 706.

Stretched to its logical end, this theory of standing is limitless. *See Allen*, 468 U.S. at 756 n.21. To take but one example, say a county names a bridge after a famed local mayor. Does any person within that county who is "deeply repulsed" by the mayor's policy decisions have standing to sue? Of course not. And though we have no doubt that Johnson's reaction to the Confederate monikers is more deeply held than this hypothetical citizen's, psychological injuries do not become more concrete as they get stronger. *See, e.g.*, *Valley Forge*, 454 U.S. at 485–86. "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Id.* at 486; *see also Quinn*, 175 F.4th at 1315–16.

In sum, the "Framers deliberately left many disputes to the political process, not the courts." *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1247 (11th Cir. 2025) (Tjoflat, J., concurring in part and dissenting in part). This is one of them. Because Johnson has neither a concrete nor a particularized injury, he lacks standing under Article III.[6]

---

[6] Because Johnson lacks standing, we do not address his formulaic and conclusory objections to the magistrate judge's report and recommendation. *See* 11th Cir. R. 3-1; *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998).

**B.**

Johnson also argues for taxpayer standing, which has developed its own parameters. We apply those doctrines here.

As any taxpayer knows, there are three possible pipers to pay: federal, state, and local. Johnson raises no federal taxpayer claim for various reasons, but we still note that, at least outside the Establishment Clause context, a plaintiff cannot sue the federal government just because he pays federal taxes. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 343 (2006). State taxpayers face an uphill battle too, and cannot "challenge state tax or spending decisions simply by virtue of their status as taxpayers." *Id.* at 346. At the very minimum, a state taxpayer needs to show a direct injury in a "good-faith pocketbook action"—not that he "suffers in some indefinite way in common with people generally." *Doremus v. Bd. of Educ.*, 342 U.S. 429, 433–34 (1952) (quotation omitted).

But we need not linger on Johnson's state taxpayer claim for a simple reason: he forfeited the issue by not raising it in his initial brief. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc); Fed. R. App. P. 28(a). Instead, Johnson's briefing focused solely on his standing to sue as a municipal taxpayer.[7]

---

[7] Johnson's pro se status does not change our conclusion, as pro se litigants are "subject to the relevant law and rules of court." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). We need not consider whether Johnson's status as a formerly licensed attorney subjects him to an even higher standard.

Municipal taxpayer standing indeed offers yet an easier road for plaintiffs.  A municipal taxpayer can sue to stop the illegal use of local tax dollars because the "interest of a taxpayer of a municipality in the application of its moneys is direct and immediate." *Frothingham v. Mellon*, 262 U.S. 447, 486 (1923).  Some jurists have expressed reservations about the continuing vitality of this doctrine, describing it as "increasingly anomalous" and "a relic in the modern landscape of standing."  *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 733 (7th Cir. 2020) (Barrett, J.); *see also Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 221 (6th Cir. 2011) (en banc) (Sutton, J., concurring).  Bound by precedent, however, we must apply it.  *See Pelphrey v. Cobb County*, 547 F.3d 1263, 1280 (11th Cir. 2008).  We thus proceed to the two-part test for municipal taxpayer standing, and conclude that Johnson cannot meet even that lighter burden.

To prove standing as a municipal taxpayer, the plaintiff must be "a resident who can establish that tax expenditures were used for the offensive practice."  *Id.*  Johnson contends that he has standing to sue because the City of Jacksonville "enact[s] general budgetary allocations inuring to the presence, maintenance, preservation and protection of" Confederate memorials on public land through "tax-based funding."  And his injuries differ "from those suffered by taxpayers in general," Johnson says, because he is African American and left feeling like a "second-class citizen" from the "tax-supported Confederate tributes on public land."

These allegations fall far short. To start, Johnson alleged no facts showing that the City devoted taxpayer funds to maintain or preserve the Confederate memorials that he identified in the complaint. It is "not enough to simply allege that the City is spending money" in an unlawful way to establish standing as a municipal taxpayer. *Protect Our Parks, Inc.*, 971 F.3d at 735. So generally claiming, as Johnson does, that the City's mayor "continues to maintain public funding for tributes to the Confederacy" does not show that the City used taxpayer funds in an unconstitutional way. Assuming that the spending is happening, without alleging any facts to support the claim, is not enough. *Cf. Pelphrey*, 547 F.3d at 1280–81. Because Johnson did only that, he does not show that he is, "will, or possibly can be out of pocket because of it." *Doremus*, 342 U.S. at 433. He thus lacks standing on this basis, too.

★    ★    ★

Earl Johnson strenuously objects to the continued presence of Confederate memorials and tributes on public land. But the "presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond v. Charles*, 476 U.S. 54, 62 (1986). That touchstone resolves this case. Because Johnson does not have standing to sue, we **AFFIRM** the district court's dismissal of his lawsuit.